## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| HOLLIE ZAKI, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. _____ |
| | § | |
| LOUDON COUNTY, TENNESSEE, | § | |
| and SHERIFF JIMMY DAVIS, | § | |
| | § | |
| *Defendants.* | § | |

## COMPLAINT

## I. INTRODUCTION

1.  Plaintiff Hollie Zaki is an observant Muslim woman.

2.  In accordance with her deeply held and sincere religious beliefs, Ms. Zaki wears a hijab every day.  Doing so expresses her faith and maintains her modesty.

3.  On December 19, 2024—for no valid or compelling penological reason, but pursuant to the Defendants' official policies—Loudon County Sheriff's Office employees required Ms. Zaki to remove her hijab for booking photographs and to be photographed without it.

4.  Afterward—for no valid or compelling penological reason, but pursuant to the Defendants' official policies—the Loudon County Sheriff's Office published Ms. Zaki's uncovered booking photo on a public website for anyone with an internet connection to see.

5. The Defendants' mistreatment of Ms. Zaki and their disrespect for her religious rights have scarred her. The Defendants' misbehavior was also illegal. The federal Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et seq.*, and Tennessee Code Annotated section 4-1-407—Tennessee's Preservation of Religious Freedom Act—flatly prohibited the Defendants from burdening Ms. Zaki's free exercise of her religion in the manner they did.

## II. PARTIES

6. Plaintiff Hollie Zaki is a citizen of Tennessee and a resident of Knox County, Tennessee. She may be contacted through counsel.

7. Defendant Loudon County, Tennessee is a county government in Tennessee. Loudon County may be served with process through its counsel or upon its Mayor at 100 River Road, Suite 106, Loudon, TN 37774.

8. Defendant Jimmy Davis is the Sheriff of Loudon County, Tennessee. Defendant Davis has final decision-making authority over policy in the Loudon County Sheriff's Office, including Loudon County policy governing the Sheriff's Office's creation and retention of Ms. Zaki's uncovered booking photographs. Defendant Davis may be served through counsel or wherever he may be found.

## III. JURISDICTION AND VENUE

9. The Plaintiff brings this civil-rights lawsuit under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et seq.*; 42 U.S.C. § 1983; Tennessee's Preservation of Religious Freedom Act, Tennessee Code Annotated section 4-1-407; and Tennessee Code Annotated section 1-3-121.

10.     This Court has original jurisdiction over the federal question presented in this lawsuit under 28 U.S.C. § 1331 and supplemental jurisdiction over the Plaintiff's state-law claims under 28 U.S.C. § 1367.

11.     Venue lies in this Court under 28 U.S.C. 1391(b)(1)–(2).

## IV.  FACTUAL ALLEGATIONS

12.     Plaintiff Hollie Zaki is an observant Muslim woman.

13.     In keeping with her religious faith, Ms. Zaki wears a hijab every day.

14.     A hijab is a traditional Muslim headscarf that is worn by observant Muslim women in the presence of men who are not family members.

15.     Requiring an observant Muslim woman to remove her hijab in the presence of men who are not her family members substantially burdens her religious faith.

16.     Requiring an observant Muslim woman to remove her hijab in front of men who are not her family members is humiliating and degrading—akin to requiring a woman to take off her shirt in public.

17.     On December 18, 2024, Ms. Zaki was arrested in Loudon County, Tennessee.

18.     After being arrested, Ms. Zaki was searched by a law enforcement officer for contraband.

19.     The search included searching her hijab.

20.     Ms. Zaki had no contraband.

21.     The law enforcement officer's search of Ms. Zaki and her hijab made

clear that Ms. Zaki did not have any distinguishing feature, not otherwise visible, that was of investigative value relative to Ms. Zaki's arrest.

22. Ms. Zaki was then booked by the Loudon County Sheriff's Office into the Loudon County Detention Facility in the early morning hours of December 19, 2024.

23. Ms. Zaki's booking process was video-recorded.

24. During her booking process, Loudon County Sheriff's Office employees directed Ms. Zaki to remove her hijab before she was led into an area for booking photos.

25. Loudon County Sheriff's Office employees took Ms. Zaki's hijab from her and did not return it to her until the next day.

26. Ms. Zaki was then required to take booking photographs, commonly known as a "mugshot."

27. Ms. Zaki was required to remove her hijab for the booking photographs and to be photographed without her hijab.

28. Ms. Zaki felt humiliated by being forced to remove her hijab for a booking photo, especially because a male officer was present when her booking photos were taken.

29. When Ms. Zaki wears her hijab, it does not obscure the view of her face or profile.

30. At the time of her booking, Ms. Zaki's hijab did not obscure the view of her identifying or distinguishing facial features or profile.

31. Ms. Zaki's identifying and distinguishing facial features are clearly

visible when she wears her hijab.

32.     At the time of her booking, Ms. Zaki's identifying and distinguishing facial features were clearly visible.

33.     Ms. Zaki does not have any distinctive facial features that are obscured by her hijab or that would require Loudon County to photograph her without wearing it.

34.     Loudon County did not have any belief or suspicion—much less a reasonable belief or suspicion—that Ms. Zaki had a distinguishing feature, not otherwise visible, that was of investigative value to her arrest or the investigation related to it.

35.     Nevertheless, when Ms. Zaki was brought into booking, she was forced remove her hijab and to take booking photos without wearing it.

36.     Ms. Zaki was later informed by jail staff that all booking photos are published on the internet.

37.     Because there is no compelling penological need to require all religious arrestees to be photographed without their religious headwear, Loudon County Sheriff's Office Policy has changed since Ms. Zaki was booked.

38.     Now, Loudon County Sheriff's Office policy states in relevant part:

> 7.     Fingerprint and photograph inmates. Copies of the fingerprints should be forwarded to the proper state and federal authorities.
>
> **a.     Arrestees and citation recipients are not required to remove religious head coverings for booking photographs so long as the head covering does not obstruct the view of the face and profile.**

**b.**      **If a head covering obscures the face or profile, staff shall request limited adjustment of the covering sufficient to obtain an unobstructed frontal and profile image, after which the head covering may be returned to its prior position.**

\*      \*      \*

9.      Any deviation from these procedures for safety or security reasons shall be approved by a supervisor and noted in the intake record.

*See* **Ex. 1,** LCDF Policy 4.02, *Admission*, at 2 (emphases added).

39.      Loudon County Sheriff's Office policy provides further that:

Consistent with LCDF Policy 4.02 Admission, as part of the search during intake, persons wearing religious head coverings must remove the head covering and allow the head to be searched for contraband or weapons, in accordance with LCDF search procedures.

The search of the head and removal of religious head coverings shall be conducted outside the presence of members of the opposite sex, to the extent operationally feasible while maintaining safety and security.
After completion of the search, the religious head covering may be placed back on for the remainder of the booking process unless otherwise restricted by safety or security considerations documented by the supervising deputy.

For booking photographs, arrestees and citation recipients are not required to remove religious head coverings so long as the head covering does not obstruct the view of the face and profile.

If a head covering obscures the face or profile, staff shall request limited adjustment of the covering sufficient to obtain an unobstructed frontal and profile image, after which the head covering may be returned to its prior position.

Any deviation from the foregoing procedures for safety or security reasons shall be approved by a supervisor and noted in the intake record, consistent with LCDF policy 4.02 *Admission*.

*See* **Ex. 2,** LCDF Policy 12.08, *Religious Practices Plan*, at 2.

40.     These policies do not endanger the Loudon County Detention Facility; they are workable; and they enable the Loudon County Sheriff's Office to maintain a safe and secure facility while respecting religious arrestees' religious rights.

41.     After Ms. Zaki was forced to remove her hijab and be photographed without it, Ms. Zaki's uncovered booking photos were published to employees of the Loudon County Sheriff's Office, and one of Ms. Zaki's booking photos was published to the public at large in contravention of her religious rights.

42.     Although Loudon County took uncovered booking photos of Ms. Zaki pursuant to official Loudon County Sheriff's policy, no valid or compelling penological reason required Defendant Loudon County to take photos of Ms. Zaki without her hijab.

43.     No valid or compelling penological reason required Defendant Loudon County to publish Ms. Zaki's uncovered booking photos, either.

44.     At minimum, after Ms. Zaki was released from custody, no valid or compelling penological reason required the Defendants to retain Ms. Zaki's uncovered booking photos.

45.     Despite having no valid or compelling penological interest in retaining Ms. Zaki's uncovered booking photos, Defendant Loudon County—at the behest of its policymaker, Defendant Davis—has retained Ms. Zaki's uncovered booking photos, not only from her December 2024 arrest but also from one or more previous bookings.

46.     The Loudon County Sheriff's Office has retained Ms. Zaki's uncovered booking photos pursuant to official Loudon County Sheriff's policy that Defendant

Davis controls.

47.     Loudon County Sheriff's Office policy does not restrict access to Ms. Zaki's uncovered booking photos to female employees.

48.     Defendant Loudon County's official policy at the time of Ms. Zaki's booking—which was promulgated and implemented by its policymaker, Defendant Davis—categorically required observant Muslim women who wear hijabs to remove them for booking photos, which Loudon County then retained despite having no valid or compelling penological interest in doing so.

49.     Given that her booking photos have already been released to the public and viewed by male Loudon County employees and agents in contravention of her religious rights, Ms. Zaki lives in daily fear that her uncovered booking photos will continue to be published, disseminated, and viewed in contravention of her religious faith, subjecting her to further humiliation.

50.     Thus, this action for injunctive, declaratory, and monetary relief for taking, publicizing, using, and retaining Ms. Zaki's uncovered booking photos followed.

## V.  CAUSES OF ACTION

### COUNT I (AS TO DEFENDANT LOUDON COUNTY, TENNESSEE, AND DEFENDANT DAVIS IN HIS OFFICIAL CAPACITY): 42 U.S.C. § 2000CC & 42 U.S.C. § 1983

51.     The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

52.     "RLUIPA prohibits a [government actor] from imposing 'a substantial burden on the religious exercise of a person residing in or confined to an institution'

unless the government shows that the burden furthers 'a compelling governmental interest' and 'is the least restrictive means' of doing so." *Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019) (citing 42 U.S.C. § 2000cc-1(a)).

53.     At all times relevant to this Complaint, the Plaintiff exercised—and she continues to exercise—her religious faith based on her sincerely-held religious beliefs.

54.     The Plaintiff's exercise of her Muslim faith includes regularly wearing a hijab when she is in public.

55.     By requiring the Plaintiff to remove her hijab for a booking photo, Defendant Loudon County—pursuant to a booking policy promulgated and implemented by Defendant Davis, its on-site policymaker—substantially burdened the Plaintiff's religious exercise.

56.     By requiring the Plaintiff to be photographed without wearing her hijab, and by retaining the uncovered photos of the Plaintiff, Defendant Loudon County and Defendant Davis substantially burdened and continue to burden the Plaintiff's religious exercise.

57.     By allowing male officers to view Ms. Zaki without her hijab and to view her uncovered booking photos, Defendant Loudon County substantially burdened the Plaintiff's religious exercise.

58.     By publishing to the public the Plaintiff's uncovered booking photo, Defendant Loudon County and Defendant Davis substantially burdened the Plaintiff's religious exercise.

59.     Defendants Loudon County and Davis had no valid or compelling

penological reasons for requiring the Plaintiff to remove her hijab for booking photos.

60.     Defendants Loudon County and Davis had no valid or compelling penological reasons for requiring the Plaintiff to be photographed without wearing her hijab.

61.     Defendants Loudon County and Davis had and have no valid or compelling penological reasons for retaining the Plaintiff's uncovered booking photos at the present time, which the Defendants recognize are unnecessary even under their own current policies.

62.     If Defendants Loudon County and Davis had some compelling basis for photographing other portions of Ms. Zaki's face that were not visible based on the way she was wearing her hijab at the time of her booking, a less restrictive option than forcing Ms. Zaki to remove her hijab and to be photographed without it was available: The Defendants could have permitted Ms. Zaki to adjust her hijab to their preferred specifications.

63.     The Defendants never made any such request or gave Ms. Zaki the option to adjust her hijab; instead, pursuant to a then-existing, categorical policy, Defendants Loudon County and Davis required Ms. Zaki to remove her hijab entirely and to be photographed without it.

64.     A hijab "has no impact [on] face recognition performance" when it comes to facial recognition technology, given that the efficacy of "face recognition is mainly depend[ent] on key facial features, such as eyes, nose, and mouth, to perform the recognition." **Ex. 3** (Report of Professor Xiaoming Liu), at 1.

65. Thus, another less restrictive option to further the Defendants' interest in identification was readily available, too: They could simply have employed the use of facial recognition technology and taken a *covered* booking photo of the Plaintiff to further their interests in identification.

66. Even though facial recognition technology afforded the Defendants a less restrictive means of furthering their interests in identification, the Defendants did not employ the use of facial recognition technology.

67. The Defendants also had available (and used) other tools to further their interests in identification that did not impose a burden on Ms. Zaki's religious rights, including fingerprinting Ms. Zaki at the time of her booking.

68. The Defendants had and have no valid or compelling penological reasons for allowing male officers and employees to view Ms. Zaki's uncovered booking photos.

69. The Defendants had and have no valid or compelling penological reasons for retaining the Plaintiff's uncovered booking photos at this time.

70. The Defendants had and have no valid or compelling penological reasons for publishing the Plaintiff's uncovered booking photographs to the public.

71. The Loudon County Sheriff's Office has agreed through its own current policy that there is no valid or compelling penological need to take or publish uncovered booking photos of the Plaintiff.

72. Requiring the Plaintiff to remove her hijab for booking photos did not further any compelling governmental interest.

73. Requiring the Plaintiff to remove her hijab for booking photos was not

the least restrictive means of furthering any compelling governmental interest.

74.     Requiring the Plaintiff to be photographed without her hijab for booking photos did not further any compelling governmental interest.

75.     Requiring the Plaintiff to be photographed without her hijab for booking photos was not the least restrictive means of furthering any compelling governmental interest.

76.     Allowing male officers and employees to view the Plaintiff without her hijab did not further any compelling governmental interest.

77.     Allowing male officers and employees to view the Plaintiff without her hijab was not the least restrictive means of furthering any compelling governmental interest.

78.     Allowing male officers and employees to view the Plaintiff's uncovered booking photos did not further any compelling governmental interest.

79.     Allowing male officers and employees to view the Plaintiff's uncovered booking photos was not the least restrictive means of furthering any compelling governmental interest.

80.     Publishing one of the Plaintiff's uncovered booking photos to the public did not further any compelling governmental interest.

81.     Publishing one of the Plaintiff's uncovered booking photos to the public was not the least restrictive means of furthering any governmental interest.

82.     After the Plaintiff was released from custody, Defendant Loudon County had no valid or compelling penological reason to retain Ms. Zaki's uncovered booking

photos.

83.     The Defendants' continued retention of Ms. Zaki's uncovered booking photos—which can be and have been viewed by male employees, officials, and agents of Defendant Loudon County—substantially burdens the Plaintiff's religious exercise right now.

84.     Defendant Loudon County's continued retention of Ms. Zaki's uncovered booking photos does not further any compelling governmental interest.

85.     Defendant Loudon County's continued retention of Ms. Zaki's uncovered booking photos is not the least restrictive means of furthering any governmental interest.

86.     Despite having no compelling interest in retaining Ms. Zaki's uncovered booking photos, Defendant Loudon County continues to retain Ms. Zaki's uncovered booking photos at the behest of Defendant Davis, its official policymaker.

87.     Given these circumstances, the Plaintiff is entitled to "obtain appropriate relief against" Defendant Loudon County and Defendant Davis in his official capacity under 42 U.S.C. § 2000cc-2(a).

88.     The Plaintiff is entitled to complete declaratory relief and injunctive relief against Defendant Loudon County and Defendant Davis under 42 U.S.C. § 2000cc-2(a) that includes, without limitation: (1) an injunction requiring that the Defendants destroy her uncovered booking photos and replace them as necessary with booking photos in which she is permitted to wear her hijab; (2) an injunction requiring that these Defendants destroy all video footage of the Plaintiff in which she

is depicted without her hijab; and (3) an injunction forbidding the Defendants' further use, publication, and dissemination of the Plaintiff's uncovered booking photos.

89.     The Plaintiff also expressly preserves a claim for money damages against Defendant Loudon County under RLUIPA.[1]

**COUNT II (AS TO DEFENDANT LOUDON COUNTY, TENNESSEE, AND DEFENDANT DAVIS IN HIS OFFICIAL CAPACITY): TENNESSEE CODE ANNOTATED SECTION 4-1-407**

90.     The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

91.     Tennessee's Preservation of Religious Freedom Act, codified at Tennessee Code Annotated section 4-1-407, provides in relevant part that:

(b)  Except as provided in subsection (c), no government entity shall substantially burden a person's free exercise of religion even if the burden results from a rule of general applicability.

(c)  No government entity shall substantially burden a person's free exercise of religion unless it demonstrates that application of the burden to the person is:

(1)     Essential to further a compelling governmental interest; and

(2)     The least restrictive means of furthering that compelling

---

[1] The Plaintiff acknowledges that the Sixth Circuit has foreclosed claims for money damages under RLUIPA.  *See Haight v. Thompson*, 763 F.3d 554, 568 (6th Cir. 2014); *but see Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 290 (5th Cir. 2012) (permitting money damages against municipalities under RLUIPA); *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1168–69 (9th Cir. 2011) ("The City of Yuma, therefore, may be liable for monetary damages under RLUIPA . . ."); *Lighthouse Inst. For Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 261–73 (3d Cir. 2007) (permitting a claim for compensatory damages under RLUIPA to proceed against a municipality).  Because *Haight*'s holding is incompatible with the U.S. Supreme Court's later decision in *Tanzin v. Tanvir*, 141 S.Ct. 486, 492, 208 L. Ed. 2d 295 (2020), though, the Plaintiff expressly raises and preserves a claim of money damages against Loudon County and asserts that *Haight* should be overruled.

governmental interest.

*Id.*

92.    Under Tennessee Code Annotated section 4-1-407(a)(5): "'Government entity' means any branch, department, agency, commission or instrumentality of state government, any official or other person acting under color of state law or any political subdivision of the state[.]"

93.    At all times relevant to this action, Defendant Davis was and is an "official or other person" within the meaning of Tennessee Code Annotated section 4-1-407(a)(5).

94.    At all times relevant to this action, Defendant Loudon County was and is a "Government entity" within the meaning of Tennessee Code Annotated section 4-1-407(a)(5).

95.    At all times relevant to this action, the Loudon County employees who participated in Ms. Zaki's booking process and took, viewed, used, and published to the public Ms. Zaki's booking photo(s) were acting in their official capacities and within the scope of their official duties pursuant to official policies such that their actions are attributable to Defendant Loudon County.

96.    The Defendants' decision to require Ms. Zaki to remove her hijab for booking photos was not essential to further any compelling governmental interest.

97.    The Defendants' decision to require Ms. Zaki to remove her hijab for booking photos was not the least restrictive means of furthering any compelling governmental interest.

98.     The Defendants' decision to allow male officers, employees, and agents of Loudon County to view the Plaintiff's uncovered booking photos was not essential to further any compelling governmental interest.

99.     The Defendants' decision to allow male officers and employees to view the Plaintiff's uncovered booking photos was not the least restrictive means of furthering any compelling governmental interest.

100.    The Defendants' publication of one of Ms. Zaki's uncovered booking photos to the public was not essential to further any compelling governmental interest.

101.    Current Loudon County Sheriff's Office Policy acknowledges that taking and retaining an uncovered booking photo of Ms. Zaki is not necessary to further any compelling governmental interest.

102.    When Defendant Davis decided to retain Ms. Zaki's uncovered booking photo after Ms. Zaki's release from custody, Defendant Davis was (and is) an employee of Loudon County and was (and is) acting as an employee and agent of Loudon County.

103.    Because Defendant Davis was (and is) an employee and agent of Loudon County and was (and is) acting as an employee and agent of Loudon County when he decided to retain Ms. Zaki's uncovered booking photos after her release from custody, Defendant Davis's decision to retain Ms. Zaki's uncovered booking photos after her release from custody was and is the action of Loudon County.

104.    The Defendants' decision to retain Ms. Zaki's uncovered booking photos

after her release from custody was not—and is not—essential to further any compelling governmental interest.

105.    The Defendants' decision to retain Ms. Zaki's uncovered booking photos after her release from custody was not—and is not—the least restrictive means of furthering any compelling governmental interest.

106.    Unlike prisons—which are responsible for the long-term custody of convicted inmates and are responsible for monitoring their real-time whereabouts at all times—non-inmates like Ms. Zaki: (1) do not remain in the government's physical custody on a long-term basis; and (2) following their release, need not have their real-time whereabouts accounted for in the same manner.

107.    Ms. Zaki was not subject to any real-time monitoring requirement following her release.

108.    The Loudon County Sheriff's Office thus has no compelling interest comparable to that of a prison in maintaining uncovered booking photographs of Ms. Zaki or other similarly situated religious arrestees.

109.    Even to the extent that Loudon County Sheriff's Office had an interest comparable to a prison, the Tennessee Department of Correction itself does not publish to the public uncovered booking photos of religious arrestees.

110.    By way of example, the TDOC's public photo of Ms. Zaki herself depicts Ms. Zaki *with* her hijab, not without it.

111.    The State of Tennessee also does not require religious individuals like Ms. Zaki to be photographed without religious headwear in other instances when the

State has identifying interests comparable to the Defendants'.

112. For example, Ms. Zaki's driver's license photo depicts her *with* her hijab, rather than without it, because Ms. Zaki was not required to remove her hijab for that official government photo. *See* **Ex. 4**, Driver's License.

113. Because municipal officials have no compelling interest in maintaining uncovered booking photographs of released religious arrestees, other Sheriffs' Offices in Tennessee—including the Rutherford County Sheriff's Office and the Davidson County Sheriff's Office—do not needlessly burden religious arrestees' sincerely held religious views by categorically requiring them to remove religious attire. *See, e.g.*, **Ex. 5** (Davidson Cty. Sheriff's Off. Booking Pol'y), at 1 ("Individuals photographed pursuant to booking procedures are not required to remove religious head coverings as long as facial features are clearly visible."), *available at* https://horwitz.law/wp-content/uploads/DCSOReligiousAccommodationPolicy.pdf; **Ex. 6** (Rutherford Cty. Sheriff's Off. Booking Pol'y), at 4 ("Arrestees and citation recipients are not required to remove religious head coverings for booking photos as long as the view of the face and profile are not obstructed by religious attire."); *available at* https://horwitz.law/wp-content/uploads/9.1402-Admission-24JAN24.pdf.

114. According to Davidson County Sheriff Daron Hall, who oversees the highest concentration of Muslim practitioners in the State of Tennessee:

> In my experience, accommodating religious arrestees' sincerely held religious beliefs by permitting them to continue wearing their religious headwear for booking photographs furthers law enforcement interests by promoting goodwill between law enforcement and the members of the religious communities we serve. It also avoids antagonizing members of those communities unnecessarily.

Ex. 7 (Hall Decl.), at ¶ 10.

115.    Many other law enforcement entities around the country similarly do not categorically require Muslim women like Ms. Zaki to remove their hijabs for booking photographs. *See, e.g.*, **Ex. 8** (Burbank, Cal., Police Dep't Pol'y), at 22; **Ex. 9** (Bloomfield Township, Mich., Police Dep't Pol'y), at 5; **Ex. 10** (Yonkers, N.Y., Police Dep't Pol'y), at 2; **Ex. 11** (N.Y. Police Dep't Pol'y), at 3; **Ex. 12** (San Diego Cty., Cal., Sheriff's Off. Pol'y), at 2; **Ex. 13** (Ventura Cty., Cal., Sheriff's Off. Pol'y), at 285–86; **Ex. 14** (Hennepin Cty., Minn. Sheriff's Off. Pol'y), at 70.

116.    Hundreds, if not thousands, of other law enforcement and governmental agencies across the United States do not require Muslim women to remove their hijabs for photographs, either—even when such agencies have a compelling interest in taking and maintaining an observant Muslim woman's photograph.

117.    For example, unlike the Defendants did at the time of Ms. Zaki's booking, the Tennessee Bureau of Investigation and the U.S. Department of Homeland Security do not categorically require removal of religious headwear when such headwear does not obscure an individual's facial features—even when serious identifying interests (like sex offender registration) are involved. *See, e.g.*, Tenn. Code Ann. § 40-39-203(h)(i)(19)(B)(v)(*a*) (Tennessee sex offender registration requirement providing that: "Photographs of applicants wearing head coverings or hats are only acceptable due to religious beliefs, and even then, may not obscure any portion of the face of the applicant"); *REAL ID Frequently Asked Questions for State Implementation*, Dep't of Homeland Sec., https://www.tsa.gov/real-id/real-id-faqs

[permalink: https://perma.cc/UU85-F95E]  (last visited Dec. 11, 2025) ("Q. Does the REAL ID Act require an applicant who wears a head covering for religious reasons to alter or remove the head covering so that the driver's license or identification card photograph shows their hair or ears?  A. No. The REAL ID regulatory standards for the digital photograph recognize that some individuals may wear head coverings for religious or other reasons. However, such coverings should not obscure an applicant's facial features or generate a shadow. For purposes of the photograph, the face should be visible from the hairline to the chin and forward of the ears, and be free of shadows. The REAL ID regulation does not require the exposure of the hair line or the ears.").

118.    Hijabs like the one that Ms. Zaki wore on the date of her arrest do not have any meaningful impact on facial recognition or the performance of facial recognition technology.

119.    For these reasons, the Loudon County Sheriff's Office and Defendant Davis never had any lawful basis for implementing and enforcing a categorical policy requiring Ms. Zaki to remove her hijab for a booking photograph in the first place.

120.    As such, forcing Ms. Zaki to remove her hijab, to be photographed without it, and then retaining her uncovered photos—even for internal use—itself violated Ms. Zaki's religious rights.

121.    The Defendants' continued retention of Ms. Zaki's uncovered booking photos—not only from her December 2024 arrest, but also from one or more previous bookings—flows from the Defendants' earlier, categorical policy of requiring observant Muslim arrestees like Ms. Zaki to take an uncovered booking photo during

the booking process.

122.  The Defendants' decision to record and then retain—following Ms. Zaki's release from custody—video footage of Ms. Zaki in which she is depicted without her hijab substantially burdens her religious faith.

123.  The Defendants' decision to retain—following her release from custody—video footage of Ms. Zaki in which she is depicted without her hijab is not essential to further any compelling governmental interest.

124.  The Defendants' decision to retain—following her release from custody—video footage of Ms. Zaki in which she is depicted without her hijab is not the least restrictive means of furthering any compelling governmental interest.

125.  The Defendants' ongoing retention of Ms. Zaki's uncovered booking photographs—not only from her December 2024 arrest, but also from one or more previous bookings—pursuant to official Loudon County policy substantially violates, right now, Ms. Zaki's religious rights without adequate justification.

126.  The Defendants' ongoing retention of video footage of Ms. Zaki in which she is depicted without her hijab substantially violates, right now, Ms. Zaki's religious rights without adequate justification.

127.  Under Tennessee Code Annotated section 4-1-407(e), Ms. Zaki is entitled to receive appropriate declaratory relief and recover her reasonable costs and attorney's fees for the Defendants' violations of Tennessee's Preservation of Religious Freedom Act.

128.  Ms. Zaki accordingly seeks declarations that the Defendants' continued

retention of the Plaintiff's booking photographs and video footage in which she is depicted without her hijab violates Tennessee's Preservation of Religious Freedom Act and the Defendants' policies allowing Loudon County employees—including male employees—to retain, use, and view Ms. Zaki's uncovered booking photos and video footage in which she is depicted without her hijab violate Tennessee's Preservation of Religious Freedom Act.

129.   Ms. Zaki also seeks an award of reasonable costs, attorney's fees, and monetary damages as permitted under Tennessee Code Annotated section 4-1-407(e).

### COUNT III (AS TO DEFENDANT LOUDON COUNTY, TENNESSEE, AND DEFENDANT DAVIS IN HIS OFFICIAL CAPACITY): TENNESSEE CODE ANNOTATED SECTION 1-3-121

130.   The Plaintiff incorporates and realleges the foregoing allegations as if fully set forth herein.

131.   Tennessee Code Annotated section 1-3-121 affords aggrieved citizens robust statutory authority to obtain injunctive relief in any action brought regarding the legality of a governmental action.  *See id.* ("a cause of action shall exist under this chapter for any affected person who seeks declaratory or injunctive relief in any action brought regarding the legality or constitutionality of a governmental action.").

132.   Ms. Zaki is "affected" by the illegal actions of Defendant Loudon County and Defendant Davis, in his official capacity, substantially burdening her free exercise rights within the meaning of Tennessee Code Annotated section 1-3-121.

133.   Ms. Zaki is entitled to complete declaratory relief and injunctive relief enjoining further harm arising from these Defendants' illegal actions, including, without limitation: (1) an injunction requiring that the Defendants destroy all of her

uncovered booking photos; (2) an injunction requiring that the Defendants destroy all video footage of the Plaintiff in which she is depicted without her hijab; and (3) an injunction forbidding the Defendants' further use, publication, and dissemination of any of the Plaintiff's uncovered booking photos.

## VI.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that:

1.      proper service issue and be served upon the Defendants, and that the Defendants be required to appear and answer this Complaint within the time required by law;

2.      the Court issue the Plaintiff's requested declarations and injunctions;

3.      the Plaintiff be awarded all compensatory, consequential, and incidental damages to which the Plaintiff is entitled in an amount to be shown at trial;

4.      the Court tax costs and discretionary costs to the Defendants;

5.      the Court award the Plaintiff pre-judgment and post-judgment interest;

6.      the Plaintiff be awarded reasonable attorney's fees under 42 U.S.C. § 1988(b) and Tennessee Code Annotated section 4-1-407(e); and

7.      the Plaintiff be awarded all further relief the Court deems proper.

Respectfully submitted,

/s/ Daniel A. Horwitz

DANIEL A. HORWITZ, BPR #032176
SARAH L. MARTIN, BPR # 037707
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
(615) 739-2888
daniel@horwitz.law
sarah@horwitz.law

*Counsel for Plaintiff*